UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ARTHUR LEE SHEARD,

        Petitioner,

v.

SHERRY L. BURT,

        Respondent.

_____/

Case No. 1:18-cv-657

Honorable Janet T. Neff

**OPINION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions that raise legally frivolous claims, as well as those that contain factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that it must dismiss the petition because it fails to raise a meritorious federal claim.

**Discussion**

I.       **Factual allegations**

Petitioner Arthur Lee Sheard is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. Petitioner pleaded guilty in the Muskegon County Circuit Court to one count of unarmed robbery, Mich. Comp. Laws § 750.530.[1] On August 20, 2014, the court sentenced Petitioner as a habitual offender, fourth offense, Mich. Comp. Laws § 769.12, to a prison term of 19 to 39 years.

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> The victim, Barbara Kartes, was unloading her groceries from her shopping cart into the back of her vehicle, which was parked in a Meijer parking lot. She left her purse in the shopping cart. Defendant drove his vehicle up to the victim's shopping cart and grabbed her purse. The victim then grabbed her purse, and defendant then accelerated his vehicle, dragging the victim. Defendant nearly struck a parked vehicle, and this caused the victim to be thrown into the side panel of the parked car. The victim suffered from a fractured skull with bleeding on her brain, concussion, traumatic brain injury, and a contusion on the back of her leg. She awoke four days after the robbery in the intensive care unit with no recollection of what occurred.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.6.) The Muskegon County prosecutor charged Petitioner with unarmed robbery. As the prosecutor and Petitioner's counsel negotiated plea terms, however, the prosecutor threatened to charge Petitioner with armed robbery, Mich. Comp. Laws § 750.529. If Petitioner were found guilty of armed robbery as a habitual offender with three prior felonies, including a prior armed robbery, the statutory minimum sentence would have been no less than 25 years. Mich. Comp. Laws § 769.12.

---

[1] The criminal proceeding at issue here, Muskegon County Circuit Court No. 14-064629-FH, proceeded in parallel with Petitioner's prosecution for another unarmed robbery, Muskegon County Circuit Court No. 14-064630-FH. This petition does not challenge the conviction and sentence in the latter case.

2

The prosecutor apparently used the prospect of a 25-year minimum sentence as a bargaining chip in the plea negotiation process. Petitioner eventually agreed to enter a plea of guilty to a charge of unarmed robbery with a *Cobbs* agreement for a 19-year minimum sentence. In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved the practice of judicial involvement in sentence bargaining. *Id*. at 211. In *Cobbs* the supreme court authorized state trial court judges to, at the request of a party, provide a preliminary evaluation of the sentence that the judge would impose. *Id*. at 211-212. The parties may then base a plea and sentencing agreement on that number. *Id*. If the court decides to exceed that number at sentencing, the court must permit the defendant to withdraw his or her plea. *Id*.

On May 29, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, this Court deems an application filed when the prisoner hands it to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on May 29, 2018. (Pet., ECF No. 1, PageID.3.) The Court received the petition on June 12, 2018. I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises three grounds for relief, paraphrased as follows:

I. Petitioner is entitled to withdraw his guilty plea when his decision to enter a plea of guilty was based upon an illusory threat to elevate an unarmed robbery charge to a non-existent armed robbery charge.

II. Petitioner was denied the effective assistance of counsel during the plea taking process in violation of the Sixth Amendment.

III. Petitioner is entitled to resentencing because the trial court imposed a sentence based on incorrectly scored sentencing guidelines and other misinformation.

(Pet., ECF No. 1, PageID.2.)

Petitioner, with the assistance of his appointed appellate counsel, presented these issues to the Michigan Court of Appeals on leave granted. By opinion dated November 15, 2016, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence. (Mich. Ct. App. Op., ECF No. 1-1, PageID.6-9.) Petitioner then sought leave to appeal in the Michigan Supreme Court raising the same issues. That court denied leave by order entered May 2, 2017. (Mich. Ord., ECF No. 1-1, PageID.10.)

Petitioner has exhausted his state court remedies. He has timely raised his habeas issues in this Court.

**II.     AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that the federal courts give effect to state court convictions to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the

4

Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). This Court must presume that a determination of a factual issue by the state court is correct, and the petitioner has the burden of rebutting the

5

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This Court accords the presumption of correctness to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. An involuntary and unknowing plea based on an illusory threat

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner challenges his plea as involuntary and unknowing because the prosecutor coerced Petitioner with an illusory threat to increase Petitioner's charge from unarmed robbery to armed robbery. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under Fed. R. Crim. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548

6

(11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*,

397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Here, Petitioner contends the prosecutor coerced him into entering a plea by making unfounded threats to increase the charge to armed robbery. The state appellate court disagreed:

> Defendant alleges that the prosecution could not charge him with armed robbery because there was no proof that defendant possessed a weapon. Defendant argues that the vehicle was not used in a manner to induce the belief that the vehicle is a dangerous weapon. We disagree. In this case, defendant admitted at his plea hearing that he drove his vehicle in a manner to pull the victim and her purse in an effort to get the purse away from the victim. While a vehicle is not inherently a dangerous weapon, when used against another in furtherance of an assault, it is capable of inflicting serious injury. *People v. Lange*, 251 Mich.App 247, 256; 650 NW2d 691 (2002). How defendant used the vehicle made it a dangerous weapon. *Id*.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.7.) The only difference between an unarmed robbery and an armed robbery is the possession of a dangerous weapon or the use of an article as a dangerous weapon. *Compare* Mich. Comp. Laws §§ 750.529 and 750.530. If the vehicle, as employed by Petitioner in this robbery, were a dangerous weapon, the armed robbery charge would be appropriate.

Whether or not the vehicle is a dangerous weapon within the meaning of Michigan's criminal statutes is entirely a matter of state law. It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary,

the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

Here, the Michigan Court of Appeals concluded that, as a matter of state law, it was possible to use a vehicle as a dangerous weapon. That determination is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Such a use would support a charge of armed robbery.

Moreover, the state appellate court found, in fact, that Petitioner used his vehicle as a dangerous weapon during the robbery. This Court presumes that determination is correct, and Petitioner must rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner has failed to do so.

Because the threat of an armed robbery charge was legitimate, Petitioner's claim that the prosecutor improperly coerced him necessarily fails. Petitioner's plea was voluntary and knowing. The state appellate court's determination to that effect is neither contrary to nor an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on this claim.

> **IV.** **Counsel was not ineffective for taking the armed robbery charge threat seriously**

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. The petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether

9

counsel's performance fell below an objective standard of reasonableness. *Id*. In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner's ineffective assistance claim is based on counsel's failure to inform Petitioner that the threat of an armed robbery charge (and the accompanying 25-year minimum sentence) was illusory because a vehicle could not be a dangerous weapon for purposes of Mich. Comp. L. § 750.529. As set forth above, however, a vehicle can be a dangerous weapon under Michigan law. Therefore, the threat of an armed robbery charge was not illusory and Petitioner's ineffective assistance claim collapses.

The Michigan appellate court's conclusion that counsel rendered effective assistance when he advised Petitioner to enter a plea is entirely consistent with, and not contrary to nor an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## V. Petitioner's challenges to his sentence are meritless and/or waived

Petitioner contends he is entitled to resentencing because the trial court based his sentence on misinformation and incorrectly scored guidelines. Petitioner's contention raises two distinct challenges: (1) the sentence is based on judge-found facts in violation of Petitioner's Sixth Amendment right to a jury trial; and (2) the trial judge erred when he scored offense variable 3 at 25 points based on a determination that the victim suffered a life-threatening or permanent incapacitating injury.

A. Sixth Amendment

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner's argument is based on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. Justice Souter has since described the holding in *Apprendi* as follows:

> We held that exposing a defendant to an increased penalty beyond the range for a basic crime, based on facts determined exclusively by a judge, violated the Sixth Amendment, *in the absence of a jury waiver*; a defendant could not be subjected to a penalty more serious than one authorized by the facts found by the jury or admitted by the defendant.

*Rita v. United States*, 551 U.S. 338, 387 (2007) (Souter, J. dissenting) (emphasis added).[2]

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*,

---

[2] It is noteworthy that Apprendi, like Petitioner, entered a plea. Apprendi, however, expressly reserved the right to challenge the sentence enhancing factor. The Michigan Court Rules also permit the entry of a conditional plea that has the effect of preserving an issue or issues for appeal despite the plea. Mich. Ct. R. 6.301(C)(2). In Petitioner's case, however, his plea was not conditional.

11

543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303). The *Blakely* Court recognized, however, that "nothing prevents a defendant from waiving his *Apprendi* rights." *Blakely*, 542 U.S. at 310. In responding to Justice Breyer's dissent, the majority explained "that the Sixth Amendment was not written for the benefit of those who choose to forgo its protection." *Id*. at 312.

In *Booker*, 543 U.S. at 220, the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines. One group of five justices concluded that the federal sentencing guidelines conflicted with the Sixth Amendment. Another group of five justices determined the appropriate remedy was to make the guidelines discretionary. Leaders of both groups recognized the ability of a defendant to waive his Sixth Amendment right. "[I]t is axiomatic that a defendant may waive his Sixth Amendment right to trial by jury." *Booker*, 543 U.S. at 276-77 (Stevens, J. dissenting in part as to remedy). Justice Breyer, for the remedial majority, also acknowledged that bargained pleas do not implicate the Sixth Amendment. *Booker*, 543 U.S. at 248.

Subsequently, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* did not prohibit judicial fact-finding in scoring the Michigan sentencing guidelines that generated the minimum range under Michigan's indeterminate sentencing regimen. *See People v. Herron,* 845 N.W.2d 533, 539 (Mich. App. 2013).[3] The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit held the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes*

---

[3] Under Michigan's system, the guideline determination affects only the minimum term. The maximum term is always the maximum punishment permitted by statute.

12

*v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 570 U.S. at 113 (emphasis added)).

However, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court held to the contrary. The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original). Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only. *Id.* at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id.* at 523. Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision. Accordingly, *Lockridge* applies. The fact that *Lockridge* applies to Petitioner's case, however, does not mean that Petitioner is entitled to relief.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id.* at 522 (footnote omitted). If a remand is appropriate, the trial court, on remand, must determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ." *Id.* at 524.

13

Here, Petitioner cannot demonstrate that his minimum sentence was constrained by a violation of the Sixth Amendment, for three reasons. First, Petitioner waived his Sixth Amendment rights. *Blakely*, 542 U.S. at 310 ("[N]othing prevents a defendant from waiving his *Apprendi* rights."); *United States v. Ramirez*, 528 F. App'x 678, 679 (7th Cir. 2013) ("Counsel recognizes, however, that by pleading guilty Ramirez waived his right to have a jury, rather than the district judge, determine the drug quantity."); *United States v. Lefebvre*, 189 F. App'x 767, 774 (10th Cir. 2006) ("In this case, Mr. LeFebvre waived his right to a jury trial without qualification, thereby precluding him from challenging his sentence on grounds the district court committed constitutional *Booker* error by not affording him a jury determination on facts relevant to sentencing."). The advice of rights form indicates that, by entering a plea, Petitioner would give up his right to be tried by a jury.

Second, the trial court derived Petitioner's minimum sentence from the parties' *Cobbs* agreement. The sentence agreement "'obviates the scoring of the sentencing guidelines[.]'" *People v. Dunbar*, No. 333510, 2017 WL 5759754, at *4 (Mich. Ct. App. Nov. 28, 2017) ("*Lockridge* does not apply to defendant's sentences because defendant was sentenced pursuant to a plea agreement, rather than the sentencing guidelines . . . ."); *see also United States v. Cieslowski*, 410 F3d 353, 364 (7th Cir. 2005) (concluding that a *Booker* challenge was not available because the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing guidelines) *cited in People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App., Oct. 13, 2015) (P.J. Boonstra concurring) ("[B]ecause defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court 'arose directly from the plea agreement and was not based on any facts found only by the trial court.'"); *People v. Banks*, No. 326795, 2016 WL 3946207, at *2 (Mich. Ct. App., July 21, 2016); *People v. Faher*,

No. 328285, 2016 WL 6127902. at *4 (Mich. Ct. App. Oct. 18, 2016) ("[W]hen a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the court's perception of the mandatory or advisory nature of the sentencing guidelines; thus the constitutional concerns underpinning *Lockridge* and *Alleyne* are not implicated.").[4] Therefore, even if Petitioner had not waived his right to a jury trial, he waived his objection to the court's scoring of the guidelines by agreeing to a specific sentence of 19 years.

Third, even if Petitioner had not waived his Sixth Amendment rights or had not agreed to the 19-year minimum sentence, he would not be entitled to relief because the 19-year minimum sentence was an upward departure from the guidelines range. The judicial fact-finding to which Petitioner now objects had no bearing on the determination of Petitioner's guidelines minimum range. Thus, *Alleyne* does not apply here. From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here when the court departed upward from the minimum range established by the guidelines, violates the Sixth Amendment.

The distinction is apparent in the remedy adopted to correct the constitutional infirmity in mandatory minimum guidelines sentencing schemes. In *Lockridge*, the Michigan Supreme Court determined it could eliminate the Sixth Amendment problem by making the

---

[4] The Michigan courts have relied on the waiver that follows from accepting a specific sentence in other contexts as well. *See, e.g., People v. Wiley*, 693 N.W.2d 800 (Mich. 2005) (where defendant agreed to a minimum sentence of 38 years, but the guidelines range was 15 to 25 years, the court held "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that specific sentence."); *People v. Cobbs*, 505 N.W.2d 208, 213 (Mich. 1993) ("[W]e caution that a defendant who pleads guilty or nolo contendere with knowledge of the sentence, and who later seeks appellate sentence relief under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), must expect to be denied relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate to the offense and offender."). Thus, Petitioner's second and third challenges to his sentence fail as well.

guideline minimum range advisory and the minimum sentence a matter for the court's discretion, the same remedy the United States Supreme Court had adopted previously in *Booker*, 543 U.S. at 245. The *Booker* court reasoned that if the sentencing rules were not mandatory and did not impose binding requirements on sentencing judges "the statute falls outside the scope of *Apprendi's* requirement." *Booker*, 543 U.S. at 259.

Whether considered before or after *Lockridge*, the trial court's departure from the mandatory minimum sentence in Petitioner's case represents an exercise of the court's discretion. The facts found to support the exercise of that discretion do not "increase[ ] the penalty for the crime beyond the prescribed statutory maximum[,]" *Apprendi*, 530 U.S. at 490, or "increas[e] the mandatory minimum[,]" *Alleyne*, 570 U.S. at 111, and therefore need not "be submitted to a jury, [or be] proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

For all of these reasons, Petitioner has failed to demonstrate that his sentence is contrary to clearly established federal law because it violates his Sixth Amendment rights. The Michigan Court of Appeals' rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this ground.

B. <u>Offense variable 3</u>

As set forth above, *see* n.4 *supra*, Petitioner has waived any challenge to the scoring of the guidelines by specifically agreeing to the 19-year minimum sentence. Even absent that waiver, however, his constitutional claim regarding the scoring of offense variable three is without merit.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson*

*v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene based on a perceived error of state law. *Wilson*, 562 U.S. at 1; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Although guidelines scoring is a state-law issue, the resulting sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213. A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner challenges the trial court's findings of fact regarding offense variable three. Petitioner bases some part of his challenge on his argument regarding the impermissibility of "judge-found" facts in sentencing. (Pet'r's Br., ECF No. 2, PageID.31-32.) As set forth fully above, however, the trial court was free to make findings of fact in support of Petitioner's sentence.

Petitioner bases the balance of his challenge on an argument that the evidence regarding the victim's injuries was not direct. Petitioner acknowledges that the victim had memory loss and bleeding on the brain. (*Id.*, PageID.18.) He also quotes from the presentence investigation report: "Investigators were later advised that Barbara's injuries included a fractured skull with bleeding on the brain. As a result, Barbara was suffering from memory loss and the inability to clearly speak." (*Id.*, PageID.34.) He complains that "[t]he victim's injuries were never verified by her husband, the investigators, [or] the victim herself . . . ." (*Id.*)

Petitioner's challenge fails at the first step. He has not demonstrated that the information regarding the victim's injuries was false. To the contrary, he has provided evidence indicating that the victim's injuries were life threatening and even permanently incapacitating. The Michigan Court of Appeals' findings to that effect were, therefore, reasonable on the record. Petitioner has not demonstrated that the state court's rejection of his challenge was contrary to or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to habeas relief on this ground.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated: June 26, 2018          /s/ Janet T. Neff
                              Janet T. Neff
                              United States District Judge